NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

VAN EPS *against* THE MAYOR, ALDERMEN, AND COMMONALTY
OF THE CITY OF SCHENECTADY.

An agreement,
on a sale of land,
" to execute a
deed" to the
purchaser, is sa-
tisfied by exe-
cuting a deed
without warran-
ty or covenants.
Where land is
sold at auction
in separate lots,
and several of
the lots are pur-
chased by one
person, it is not
an entire con-
tract; and if the
vender cannot
give a title as to
all the lots, the
vendee cannot
rescind the a-
greement *in toto*,
but must take a
conveyance for
such of the lots
as the vender is
authorized to
convey.
The vender is
bound, if requi-
red, to give se-
parate deeds for
the several lots,
and his offer to
execute one
deed for the
whole does not
render the con-
tract entire.

THIS was an action of *assumpsit*, for money had and receiv-
ed, &c., to recover back the consideration money, and interest
paid by the plaintiff, for thirty-three lots of land.   Plea *non as-
sumpsit.*   The cause was tried at the *Schenectady* circuit, in
*August*, 1814, before Mr. Justice *Spencer*.

On the 8th of *October*, 1805, the defendants sold to the plain-
tiff, at public auction, as the highest bidder, thirty-three lots of
ground, in the city of *Schenectady*, lying on the *Schenectady* and
*Albany* turnpike road, to wit, Nos. 1, 2, 3, 4, 5, 6. 9, 10, 11,
12, and 13, in the first allotment, and Nos. 8, 9. 16, 17, 18, 19,
20. 33, 34, 35. 62, 63, 64, 65. 116, 117, 118, 119. 162, 163.
165, and 166 in the second allotment.   The lots were put up
and sold separately, one after the other, at the same time ; the
plaintiff having purchased each lot for a distinct and separate
price.   The treasurer of the defendants delivered to the plain-
tiff thirty-three certificates, of one of which the following is a
copy : " In virtue of a resolution of the mayor, aldermen, and
commonalty of the city of *Schenectady*, I do hereby certify, that
*Abraham Van Eps* has this day purchased at public auction,
lot No. 1, of the first allotment, on the *Albany* and *Schenectady*
turnpike, in the second ward of the said city, for the sum of 50
dollars, one fourth of which, amounting to 12 dollars and 50
cents, I have this day received, and upon his paying the sum
of 12 dollars and 50 cents, in six months from this date, the sum
of 12 dollars and 50 cents, in one year and six months from
this date, and the sum of 12 dollars and 50 cents, being the re-
sidue of the said sum of 50 dollars, in two years and six months
from this date, with lawful interest on the said sums, from time to
time, to be paid as aforesaid, then, and in such case, a deed
will be executed by the mayor, aldermen, and commonalty of
the said city to the said *Abraham Van Eps*, his heirs and assigns
forever.   8th of *October* 1806."

The plaintiff then proved the payment, by him, of the whole
of the consideration of the lots so purchased, and produced re-
ceipts of the several treasurers of the said city for the same ; the

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

last of which receipts was dated 21st of *December*, 1812. On the 12th of *July*, 1813, the plaintiff exhibited the said receipts to the mayor of the city, and demanded a deed for the lots so purchased by him. The mayor showed the plaintiff a blank quitclaim deed, which he offered to fill up and execute to him, for the said lots. The plaintiff inquired whether the defendants were not out of possession of part of the land; and was answered by the mayor in the affirmative, who said that *John H. Schermerhorn* was in possession of it; that the defendants had brought an action of ejectment against *Schermerhorn*, to recover the possession, but had failed in their suit. The mayor, nevertheless, offered to execute a quit-claim deed to the plaintiff, if he would accept it, saying, that *Schermerhorn* would be in town in a few days, when an exchange would be made. The plaintiff refused to accept any deed, unless such a one as would secure to him the purchase money, in case the title proved bad; but the mayor refused to execute any other than a quit-claim deed.

The plaintiff then produced the records, or book of minutes of the corporation, in which was entered, the 6th of *September*, 1806, a resolution for the sale of the lots above mentioned, at public auction, in the terms as above mentioned in the treasurer's certificate. There were various subsequent resolutions authorizing the mayor to execute deeds to the purchasers, on the treasurer's receipts being produced for the purchase money, &c. to have the payments collected, and to inquire into the claim of *Schermerhorn* to certain lots, and take measures, if a settlement could not be effected with him, to bring an action to recover the possession. On the 5th of *May*, 1812, it was resolved, by the defendants, that the treasurer be directed to collect the amount due for the turnpike lots, except such lots as were in controversy. At the time this resolution was passed, the plaintiff was a member of the corporation, and continued to be a member for 12 months thereafter. The land in possession of *Schermerhorn*, referred to in the minutes of the corporation, covered two acres, one rood, and eight perches, of lots Nos. 11, 12, and 13, three of the lots purchased by the plaintiff. It was proved that part of lots, Nos. 11, 12, and 13, had been the property of *Schermerhorn*, and his father, for more than 27 years, and had been continually in their possession. *I. F. Schermerhorn* came to the possession about seven years ago, by descent from

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

his father, and about five years ago, enclosed it with a ditch; and held adversely to the defendants.

The whole amount of the purchase money paid by the plaintiff, with interest to the 20th of *October*, 1814, was 2,490 dollars and 34 cents; and the amount paid on lots 11, 12, and 13, in possession of *Schermerhorn*, with interest to the 20th of *October*, 1814, was 834 dollars and 65 cents.

The auctioneer who sold the lots, testified that the treasurer of the defendants was present, and stated the terms of sale, but nothing was said as to the nature or form of the deed to be given; and that he never heard that *Schermerhorn*, or any other person, had the possession, or laid claim to any of the lots. Another witness testified, that the adverse possession of *Schermerhorn* was a matter of public notoriety at the time of the sale.

The judge was of opinion that the plaintiff was entitled to recover the sum of 834 dollars and 65 cents only. The jury found a verdict for the plaintiff for the whole sum of 2,490 dollars and 34 cents, subject to the opinion of the court, on a case containing the facts above stated; and if the court should be of opinion that the plaintiff had no right to rescind the contract as to the whole of the lots, but only as to the three in controversy with *Schermerhorn*, then the verdict was to be reduced to 834 dollars and 68 cents; or if the court should be of opinion that the sale as to any of the lots ought not to be rescinded, then a judgment of nonsuit was to be entered.

*Hudson*, for the plaintiff. Every sale of real estate, at auction, is a sale of the title, or the legal estate, in fee, clear of all encumbrances; unless the terms of sale, or agreement of the parties, be different.[*] A covenant to execute a good and sufficient deed of land, means, that the party is to give a good and valid conveyance of the title.[†] If the vendor sells a doubtful title; if there are no persons to covenant; if title deeds cannot be produced; or if there are encumbrances, or the purchaser is to take the title at his own risk; all these are circumstances which must be inserted in the terms of sale, and made known to the vendee, otherwise the general principle is to govern, and the vendee may disaffirm the contract, and recover back the deposite money. *Van Ness*, J., in *Judson* v. *Wass*, says, "in every sale, like the present, there is a condition that the

* *Sugden's Law
of Vendors,* 5, 6.
21. 25. 296.

† *Clute* v. *Robinson,* 2 *Johns. Rep.*
595. 613. *Cole*
*and Frost* v. *Raymond,* 2 *Caines,*
195. *Judson* v.
*Wass,* 11 *Johns.
Rep.* 528. *Jones*
v. *Gardner,* 10
*Johns. Rep.* 269.

purchaser shall not be bound to part with his money, unless the seller is able to give him a title according to the terms of the sale."

If the vendor is not ready with his title deeds at the day fixed, no action lies against the purchaser for the non-performance of his agreement.*

The purchaser must take care that he has a good title, or an express warranty,† which would be a useless caution, if the vendor was not bound to show his title, or execute a deed with the necessary covenants.

Here was a sale at public auction, without any previous agreement between the parties, and the terms of sale were, that a deed was to be executed when the money was paid. The fair construction of the terms of sale is, that the *title* was to be sold without limitation, and the plaintiff, having paid his money, and demanded a conveyance that would protect him, and no title being shown or tendered, he may rescind the contract. He was entitled to the regular chain of covenants, of seisin in fee, and power to convey; for quiet enjoyment, &c.; unless these covenants are expressly dispensed with in the terms of sale.‡

A deed means a good and sufficient deed, or one containing the usual or reasonable covenants.§ It is only where purchases are made with the express understanding that the title is to be at the risk of the vendee, that these covenants are dispensed with.‖

After the vendee has accepted the deed, there is an end of the agreement, and he has nothing to look to, but his deed.** He has time, therefore, to look to the deed, and before he has accepted it, the maxim of *caveat emptor* does not apply.††

The plaintiff, in this case, asked no more than what every purchaser is, by law, entitled to. If there are doubts as to the title of the vendor, neither a court of law nor equity will compel the vendee to a performance. Here there were reasonable doubts, as the defendants, when called upon, would neither show their title deeds, nor give a deed with the usual and reasonable covenants. The act relative to sheriffs' sales‡‡ shows the sense of the legislature on this subject, by protecting purchasers, and providing that their money should be restored to them, in case there should be a failure of title, or encumbrances.

NEW-YORK,
Oct 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

*Berry v. Young, 2 Esp. Cas.640.n.
Sugden's Law of Vendors, 246.
†1 Salk. 211.

† Sugden's Law of Vendors, 298—300.

§ Com. Dig. Cond. (H.)

‖ Per Livingston, J., in Frost v. Raymond, 2 Caines, 195.
** 10 Johns. Rep. 297.

†† 6 Term Rep. 606.    3 Bos. & Pull. 162, 163.

‡‡ N. R. L. 504. sess. 36. ch. 50. s. 11.

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF. SCHENECTA-
DY.

\* 5 Burr. 2639.

Besides, here was such a want of disclosure of circumstances which ought to have been disclosed at the time, that the purchaser ought to be allowed to rescind the contract;* more especially, as a corporation cannot be liable to an action for deceit or fraud.

Again, all the lots sold were so connected, that it must be considered as an entire sale. All the payments were made together, as one entire contract, and the deed tendered by the defendants was for the whole of the lots sold. There being an adverse possession of some of the lots, so that the defendants could not give a good title for them, the case comes within that of *Poole.*

† 2 Bro. Ch. Cas.
118.

*v. Shergold,*† in which Lord *Kenyon*, when sitting for the Lord Chancellor, said, that if a purchase was made of a mansion house in one lot, and of farms, &c., in other lots, and no title could be made by the vendor to the lot containing the mansion house, the purchaser might rescind the whole contract.

That the plaintiff has a right to recover back the money paid for the three lots held adversely at the time of the sale, there can be no doubt. It has been repeatedly decided in this court, that a party cannot convey lands held adversely, without being guilty of maintenance; and if he does, his deed is void.‡

‡ *Williams v.
Jackson,* 5 *Johns.
Rep.* 489. *Jackson v. Dumont,* 9
*Johns.* *Rep.* 58.
*Jackson v. Matsdorf,* 11 *Johns.
Rep.* 97.
§ *Sugden's Law
of Vendors,* 1, 2.
7. 195. 199.

*J. V. N. Yates,* contra. The vendor of real property is not bound to return the purchase money, unless there is fraud in the sale, or a warranty;§ and where the action is either to recover back a deposite, or for damages, it is essential to prove that the vendor *knew* of the defect. There was no pretence of any *mala fides* in this case, or a fraudulent concealment. It is true, that there are a class of cases where an action lies to recover back money, on the ground of a failure of consideration; but the action does not lie, if the money has been paid under a full knowledge of the circumstances; or where there is no fraud.‖

‖ 2 East, 269. 1
Bos. & Pull. 260.
1 Esp. N. P. Cas.
279.
** 5 Johns. Rep.
58.

In *Nixon v. Hyserott,*** this court said that a conveyance would be good and perfect, though it contained no personal covenants or warranty.

In *Poole v. Shergold,* Lord *Kenyon* decided, that, where an estate is sold at auction in lots, and the vendor has not a title to all the lots sold, the purchaser will be compelled to take the lots to which the title can be made, if they are not implicated

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

with the rest; and he is entitled to compensation only *pro tanto.*

In *Drew* v. *Hanson,*[*] an injunction was obtained, restraining the defendant from proceeding, at law, to recover back his deposite, which was continued by Lord *Eldon,* though it appeared that the principal subject of the purchase were the corn and hay tithes of the parish, inserted in the particulars of the sale, and half the hay tithes belonging, in fact, to the vicar, and the other half being commuted for a customary payment. His lordship, in that case, said, that, in enforcing a specific performance, on the principle of a compensation for the variance from the description, the court had gone so far as to defeat the very object of the purchaser; and he states several cases of apparent hardship; as, where there was a contract for the sale of a house and wharf, and the object of the purchaser was to carry on business at the wharf, yet the court of chancery considered it a specific performance of the contract, by giving him the house, without the wharf. So, in *Shirley* v. *Davis,* where the subject of the contract was a house on the north side of the *Thames,* supposed to be in the county of *Essex,* but which, in fact, was in the county of *Kent,* and the purchaser was told he would be made a churchwarden of *Greenwich,* and his object was to be a freeholder of *Essex,* he was compelled to take the house. So, in Lord *Stanhope's* case, where the object was to get an estate *tithe free,* Lord *Thurlow* compelled him to take the estate subject to tithes.(*a.*)

In *Johnson* v. *Johnson,*[†] the house was valued, and paid for, at 300 pounds, and the land at 700 pounds; and the purchaser being evicted from the house, for a defect of title, brought his action to recover back the 300 pounds, but refused to give up

* 6 *Vesey, jun,*
675. See, also,
7 *Vesey, jun.* 270.
3 *Anstr.* 657.

† 3 *Bos.* & *Pull.*
162.

(a) Mr. *Sugden,* (*Law of Vendors,* 189,,) remarks, that Lord *Eldon,* in *Drew* v. *Hanson,* did not take notice of the cases of *Chambers* v. *Griffiths,* (1 *Esp. Cas.* 149 ,) and *Boyer* v. *Blackwell,* (3 *Anstr.* 657.,) but that *he* had learned, that Lord *Eldon* had since mentioned, from the bench, that he had met with the case of *Chambers* v. *Griffiths,* and desired it to be understood, that he was not of the same opinion with Lord *Kenyon.* The case of *Chambers* v. *Griffiths* was that of several houses put up and sold in separate lots, three of which were purchased by the plaintiff, but the vendor being unable to give a title to more than one of them, Lord *Kenyon* held, that it must be taken to be an entire contract, and if the vendor fails in making out a title to any one of the lots, the purchaser might rescind the whole contract. *C. B. M'Donald* seems to have been of the same opinion in *Boyer* v. *Blackwell*; and Lord *Alvanley,* in *Johnson* v. *Johnson,* (3 *Bos.* & *Pull.* 162.) was of opinion, that, though a court of equity might inquire into all the circumstances, and ascertain how far one part of the bargain was a material ground for the other, and award a compensation according to the real state of the transaction; yet that, in a court of law, it must be deemed an entire contract.

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

the land, and the court of C. P. held, that he was entitled to recover.

T. *Sedgwick*, in reply, insisted that this was an entire con-tract, and that a court of law could not enter into those parti-cular circumstances, which might induce a court of equity to compel a performance of part only of the contract. The deci-sion of Lord *Kenyon*, in *Chambers* v. *Griffiths*,* was decisive on this point.

It does not follow, that, because nothing was said about any covenants in the deed, the tender of a mere quit-claim deed, without any covenants, was sufficient. Though some of the old cases are contradictory on this subject,† yet the general rule is, that the deed must contain reasonable covenants, or an ef-fectual assurance. A court of equity will not compel a specific performance, unless the title of the vendor be free from all sus-picion. The purchaser is not bound to accept a doubtful title.‡ The defendants being out of possession of part of the lots sold, was sufficient to raise doubts as to their title. The defendants, at the trial, ought to have shown that they had a good title to the whole.

YATES, J., delivered the opinion of the court. In the certifi-cate or contract executed by the treasurer of the corporation, and countersigned by the purchaser, the lot sold is mentioned, and that upon the purchaser's making the payments, particu-larly stated, *a deed will be executed for it by the defendants* to the purchaser; and, in this instance, *to the plaintiff, his heirs and assigns, for ever.* This, certainly, according to the terms used, does not create an obligation on the part of the corpora-tion to execute a deed containing the covenants insisted on by the plaintiff. The deed stated in the case, and offered to be executed by the mayor, was a sufficient compliance with the terms of the contract, to exonerate the defendants; and, unless other circumstances are disclosed by the evidence, to justify the plaintiff in his demand to have the covenant required by him inserted, he is still held by the contract, and obliged to accept of the conveyance offered to him. By covenanting to execute a deed, no greater duty or obligation can be intended than to execute a conveyance or assurance of the property, which may be good and perfect, without warranty, or personal

* 1 *Esp. N. P. Cases,* 149.

† *Com. Dig. Cond.* (H.)
1 *Sid.* 467.

‡ *Sugden's Law of Vendors,* 210.
2 *Vesey,* 59. 2
P. *Wms.* 198. 2
*Vesey,* 679.
*Peake's Cases,*
131. per *Ld. Ken-yon.*

covenants. Its meaning, in the contract before us, is clear, and decisive, and will not, even by implication, admit of a more extended construction or definition.

NEW-YORK,
Oct. 1815.

VAN EPS
v.
CORPORATION
OF SCHENECTA-
DY.

In the case of *Frost and others* v. *Raymond*, (2 *Caines' Rep.* 191.,) it is stated, in the opinion of the court, to be a settled position, that an estate in fee may be created by the usual and solemn forms of conveyance, without warranty, express or implied ; and that a conveyance in fee does not, *ipso facto*, imply a warranty ; that if it did, our books would be inconsistent and unintelligible on the subject. The case of *Nixon* v. *Hyserott* (5 *Johns. Rep.* 58.) supports the same principle, and shows, that a general power to execute a deed does not authorize the giving it with the usual covenants of warranty, &c. It is evident, then, that where it is contracted to execute a deed, as in this case, to the plaintiff, his heirs and assigns, for ever, no covenant of any description can be intended, either by implication or otherwise ; nor will the circumstance of the sale being at auction, vary the result. It must entirely depend on the contract made at the time, which, in this case, is conclusive against the insertion of the covenant required by the plaintiff, as appears from the conditions or terms of sale previously made known by the treasurer, and the subsequent memorandum or certificate under the signature of the parties.

It cannot be pretended that this was one entire contract for all the lots. They were put up at auction, separately, and a certificate given for each lot, which was countersigned by the purchaser, so that the corporation were obliged, if required, to give separate deeds. The offer, by the mayor, to give one deed or quit claim for all the lots purchased by the plaintiff, will not give such a character to the transaction as to make it an entire contract, and thus authorize a relinquishment, on the part of the plaintiff, of the purchase of the whole thirty-three lots, because a part of them might have been held adversely at the time of sale. The fact that each lot was separately contracted for, appears so conclusively from the evidence in the case, as, in my view, to put the right of rescinding, on the ground that the purchase of all those lots was one entire contract, wholly out of the question ; and, therefore, the existence of an adverse possession of a part of the lots could not affect the contracts for the residue.

From the facts disclosed by the case, it does appear that lots Nos. 11, 12, and 13, were held adversely to the title of the defendants, at the time the plaintiff contracted to purchase them, and continued so until the payments for them were made, which would, of course, have rendered a deed for these lots (if it had been executed) wholly inoperative. The plaintiff ought, consequently, to recover back the amount of the consideration money paid for them. The verdict must, therefore, be reduced to 834 dollars and 65 cents, according to the stipulations in the case, for which the plaintiff must have judgment.

Judgment for the plaintiff, accordingly.