# DECISIONS

OF THE

# SUPREME COURT OF THE STATE OF FLORIDA,

AT

# JANUARY TERM, 1849.

RICHARD H. LONG, PLAINTIFF IN ERROR, *vs.* BENJAMIN F. AL-
LEN, USE, &C., DEFENDANT IN ERROR.

In an action upon a note given to secure the payment of the purchase money
of lands, an equity existing in a third person is not sufficient to sustain a
*plea of* failure of consideration.

A mere equity in another person is no defence at law, in an action brought to
recover the purchase money. There must be fraud or eviction, or some-
thing equivalent thereto ; or admitted or unquestionable paramount title.

When the vendor of land has a patent from ·the United States, and the pay-
ment of the purchase money is resisted on the ground that there is an out-
standing title in another person, evidenced by a receipt given to such other
person by the Receiver of the Land Office, the defence is not such a one
as can be set up in a court of law against the person holding and exhibi-
ting the patent, and who is seeking to recover on a note given by the pur-
chaser. Especially will a court not be inclined to admit such a defence,
where it appears that, at the time of the purchase, the purchaser had
knowledge of the existence of the claim so set up.

A bond or covenant constitutes a good and valuable consideration for a note
given upon a sale of lands ; and a want or failure of title is no defence to
an action on the note.

A court of law, though the proper tribunal to try the title to land, will not
try such title collaterally.

This case was brought up by writ of error from Jackson Circuit
Court. The action, which was assumpsit, was brought by Allen, as
administrator of Richard C. Allen, deceased, for the use of the Ken-
tucky Asylum for teaching the deaf and dumb, and was founded upon
a note given by Richard H. Long, the plaintiff in error, to the said
Richard C. Allen in his life time, and which, it was admitted, was

2

given to secure the purchase money for the northwest quarter of section twenty-two, in township five, of range ten, north and west, purchased from Allen, as the agent of the Deaf and Dumb Asylum of Kentucky.

The cause was tried before Judge MACRAE, at the Fall Term of Jackson Circuit Court, 1846.

The defendant in the court below and the plaintiff in error here, pleaded *non assumpsit*, and a failure of consideration and want of title in the Deaf and Dumb Asylum.

To rebut the plea of a failure of consideration and want of title in the Deaf and Dumb Asylum, the plaintiff below offered in evidence the original patent for the land sold, signed by John Q. Adams, President of the United States, and dated on the 31st day of July, 1829, conveying the absolute title to the Asylum. The plaintiff also proved upon the trial that defendant went into possession of the land, and that he has always remained in the quiet enjoyment of the same.

The defendant, to support his plea of failure of consideration and want of title, offered in evidence a receipt, signed by R. K. Call, *Receiver* of the Land Office at Tallahassee, dated January 1, 1827, given to Charles Williamson, assignee of William T. Kilbee, for a sum of money paid by him for the identical land sold by Allen to defendant. This receipt of the Receiver of the Land Office was offered for the purpose of showing that the title to the land was outstanding and in another person, to wit : in Charles Williamson. The defendant moved the court to instruct the jury, that the receipt was evidence of title to the land in Williamson, which was refused; and the court instructed the jury, that the receipt was not evidence of title against the patent.

Defendant moved the court to instruct the jury, that it was competent for them to inquire and decide from the evidence offered by said receipt and patent, whether the United States had not parted with the title to said land, before the grant of the patent—and if so, whether the patent was not void, so that the plaintiff could not make a good title to defendant—which instruction the court refused, and charged the jury that it was not competent for a court of law to inquire into the validity of the patent in the mode proposed.

Defendant prayed the court to instruct the jury, that, under his replication, the plaintiff was bound to prove that the Kentucky Asylum was authorized, by its act of incorporation, to sell and convey

real estate belonging to it, and that, having failed to do so, the defendant was entitled to a verdict—which instruction the court also refused to give, but charged that the plaintiff was entitled to a verdict upon the evidence.

The bill of exceptions shows that the defendant adduced in evidence a paper which was called a title bond, given by R. C. Allen, for the Asylum, containing a covenant to make good and sufficient legal conveyance, upon payment of the note given by defendant.

The court in this case instructed the jury generally, that, whatever might be the law in regard to the validity and force of the papers submitted by the defendant, there being no other evidence to show fraud or mistake in the rendition and execution of the patent exhibited, the latter was conclusive in law as to the title of the plaintiff, and that the same having been tendered to the defendant as evidence of title, the latter could not at law, upon the evidence in this case, avoid the payment of the note sued on.

To all which opinions and instructions, the defendant below excepted; and by his counsel assigned for error in this court the instructions so given and refused.

*Carmack, Stephens & Baker,* for Plaintiff in Error.

The question presented by the assignment of errors is, whether the plaintiff in error, Long, was not under the proof entitled to a verdict, on the ground that the title to the land purchased was not in the Asylum, but in Williamson, assignee of Kilbee.

1. Under the contract with the Kentucky Asylum, Long had a right to insist upon a title clear from suspicion. 1 Eng. Com. Law, case of Maberly *vs.* Robins, 214. 12 Johns., 247. 4 Taunton, 334.

A contract to make and execute " a good and sufficient deed. to convey title is not performed, unless a *good* title passes by the deed." Chitty on Cont., p. 729—note 1.

The party must be able to convey such a title as the other party has a right to expect. Idem.

2. Had the Kentucky Asylum a clear title to the land purchased by Long ?

The evidence in the case proves that, before the patent under which the Kentucky Asylum claims, was obtained, a certificate for the same land was issued to Williamson.

It is admitted that, in an action at law between the patentee and

the tenant in possession who holds against the patent, the patent is conclusive of title. See Bagwell *vs.* Broderick, 13 Peters, 436. But it appears from the same case, that those who claim against the patent may file a bill in equity, and show that the patent issued by *mistake*—a court of equity being the forum in which the equities of the parties may be investigated. Williamson, then, as assignee of Kilbee, may, at any time, file a bill in equity against the Kentucky Asylum and those claiming under it, and upon showing that the patent issued by mistake, procure a patent himself for the same land—which patent, when obtained, (though younger than that held by the Kentucky Asylum,) would by relation take effect from the date of the entry, and thereby prove a prior *legal title.* Taylor & Quarles *vs.* Brown, 2 Cond. R., 243.

Chief Justice Marshall, who delivers the opinion of the court in the case above cited, says : " The principle on which relief is granted is, that the patent, which is the consummation of title, does in equity relate to the inception of title, and therefore in a court of equity, the person who has first appropriated the land in contest, has the best legal title, unless his equity is impaired by the circumstances of the case.

If this be true, as soon as Williamson shall have successfully asserted his title in a court of equity, Long, or any other person who takes possession under the patent of the Kentucky Asylum, may be evicted. It depends, then, upon Williamson, whether Long shall have the land or not. If the title fail, it cannot be material to Long, whether Williamson causes it to fail, by going into a court of equity, or waiting for a patent and proceeding in a court of law. Let him adopt either course, the consideration fails, and the plea is sustained.

3. That the court was bound to notice equitable objections to the title. See Elliott *vs.* Edwards, 3 Bos. & Pull., 181. Maberly *vs.* Robins, 5 Taunt., 625.

4. It is no answer to say, that a bond for title was taken by Long, or tendered him by the Asylum ; for when a note is given for the price of land, and the title fails, this is a good defence to an action on the note. Frisbee *vs.* Hoffnagle, 11 John. R., 50.

*C. H. Dupont,* for Defendant in Error :

The defence set up by the defendant below, was that the Deaf and Dumb Asylum of Kentucky had not a valid title to the land, and could

not comply with the contract to make a good title to the defendant; and to support this defence, the defendant sought to give in evidence proof of an "entry" of the said tract of land in the office of the Register at Tallahassee, by another person in 1827.

The plaintiff to sustain the allegation contained in his replication, viz: that the Deaf and Dumb Asylum was prepared to convey to the defendant a good title, upon the payment of the purchase money, offered in evidence the patent of the government, conveying the said tract of land in fee to the said Deaf and Dumb Asylum. Upon this state of the case, the defendant in error assumes the following positions, to wit:

I. In an action at law, the "patent" from the United States for part of the public lands is conclusive as to title    Bagwell vs. Broderick, 13 Peters, 436.    McArthur vs. Browder, 4 Wheat., 488.    4 Con. Rep., 517.

II. The patent is the foundation and completion of the title, and establishes in a court of law the performance of every pre-requisite, and no inquiry into the preliminary measures which ought to precede it, can be raised in a trial at law. McArthur vs. Browder, 4 Wheat., 488. 4 Con. R., 517. Stringer vs. lessee of Young, 3 Peters, 337.

It may be proper to remark, that the cases cited to sustain the foregoing propositions, were actions of ejectment, but I think that the following corollary may be legitimately deduced therefrom, to wit : If, in an action of ejectment, when "title" constitutes the primary question, the validity of a patent from the government may not be impeached, much less will it be tolerated, when the question of "title" is only incidentally involved, as in the case at bar.

III. In an action of assumpsit, to recover money deposited upon a purchase of real estate, upon an allegation that the defendant has failed to make a proper title, the court will not consider whether the title is of a doubtful description, (such as a court of equity would not compel an unwilling purchaser to take,) but simply whether the vender has or has not a legal title to convey.    Bayman vs. Gutch, 7 Bingham, R., 379.    20 En. C. L. R., 170.

IV. The vendee of real estate cannot avoid the payment of the purchase money, by alleging a want of title in the vendor, so long as he retains possession of the premises sold. Archer vs. Bamford, 3 Starkie R., 175.    14 En. C. L. R., 176-'8.

V. The possession of the patents of the United States is conclusive evidence of a title in the Kentucky Asylum to convey, and the validity of the same, as against any muniment of title less than a patent, can be inquired of only in a court of equity. Bagwell vs. Broderick, 13 Peters, 436.

Opinion by Justice BALTZELL:

This is a suit on a promissory note, payable at the Union Bank of Florida, given for the purchase of a tract of land, and the defence is a failure of consideration, based upon an equitable right in a third person. The case was tried upon the evidence, without reference to the pleadings, the court instructing the jury as to the points presented. The propriety of these instructions is now raised in this court. The error assigned presents the main question in the case—that under the proof defendant was entitled to a verdict, on the ground that the title to the land purchased was not in the Asylum, but in Williamson, assignee of Kilbee. Strictly speaking, the instruction might have been refused, on the ground that the title was not as asserted, but in the Asylum obviously, through the patent of the United States, which they held and tendered in evidence. The more appropriate question is, whether through the equity existing in Williamson, the defendant could maintain his plea of a failure on that account. To solve this question, we must refer to the bond taken by defendant, on executing his note. This formed the consideration for it, and to the extent of the covenant contained in it, plaintiff is bound, and no further—it not being pretended that there was fraud in any respect.— The covenant there is to make "good and sufficient legal conveyance, upon the payment and full discharge of the said promissory note." We do not consider it necessary, on the present occasion, to determine the relative effect of these agreements, whether they are dependent or independent—the point has not been argued before us, and the case may be decided upon other grounds, admitting, in our opinion, of neither doubt nor question.

In argument, and on the trial in the Circuit Court, the case was treated as if there had been a covenant for good and sufficient title— a covenant in the opinion of at least two of the most enlightened courts in the Union, of very different import from that of a sufficient deed or conveyance. The words, "good and sufficient deed," have no reference to the title; "it is a covenant relating merely to the va-

lidity and sufficiency of the conveyance 'in point of law to pass what-ever right the plaintiff had in the lands to the defendant." "It is impossible," says C. J. Spencer, in a case reviewing the decisions in New York in this respect, "to torture the covenant to give a good warrantee deed of conveyance to mean that he will give a good ti-tle." 20 John., p. 132. 12 John., 436. 13 John., 350. 16 John., 268. 6 Cowen, 21-2. 15 Pickering, 553.

Even this question seems to be unsettled in the American Courts, the Supreme Court of Pennsylvania holding the adverse doctrine ; nor do we design to express a definite opinion on the present occasion.

In the case under consideration, we find the plaintiff in possession of the patent of the United States, granted in July, 1829, nearly twenty years since, and during that long period it has not been as-sailed. The defence set up under Williamson is, in the pleadings, alleged to be a claim—not even a subsisting, or a good and valid one. At the best, it is a mere equity—dormant from its existence in 1827, and never asserted in court or elsewhere, as appears from the record, to the present time. It has not disturbed the defendant's possession obtained under the purchase from the Asylum and which he has held for several years, nor is there an allegation that there is any fear of its disturbance, or that there is a design to assert the claim to his injury. Admitting that Williamson might, in a court of equity, have obtained his right over the patent and compelled a conveyance of the land, yet it by no means follows that the defence would be available to defendant here. But in addition to all this, by the plea in the case, this very claim of Williamson was known to defendant at the time of his purchase. Under such circumstances, to hold the defence avail-able, would be going far beyond the decisions of any of the courts that have permitted objections of this character. The cases on the subject in the American Courts are based on the ground of fraud or eviction, or that which is equivalent, or of admitted or unquestion-able paramount title. The general rule at common law, and that now prevailing, is that the bond or covenant constitutes a good and valuable consideration for the note, and, of course, a want or failure of title would be no defence to an action on the note. 1 Greenleaf, p. 352. 2 Wheat, p. 13. If there be no ingredient of fraud in the case, and the party has not had the precaution to secure himself by covenants, he has no remedy for his money, even on a failure of ti-tle. 2 Kent, 473.

The case of Frisbee *v.* Hoffnagle, cited by defendant's counsel, 11th Johnson, p. 50, asserting a different rule, has been overruled—not only by the same court, 19 Johns., 77—21 Wend., 132, 134—25th Wend., 107, reviewing the entire ground, but by other courts—3 Pickering, 452. 3 Martin's La. Rep., 111. 8 Smede & Marshall, 742. In this latter case, the court say : " A court of law, although the proper tribunal for the trial of titles to land, will not try such titles collaterally. The proceeding must be direct, otherwise the title cannot be questioned. Where there has been an eviction, the defence of failure of consideration may be let in, because the superiority of the outstanding title is then established by a judicial determination." Hay, &c. *v.* Taliaferro, Mississippi Reports. In South Carolina, where defences of this character have prevailed to the greatest extent, the courts have evinced a disposition to retrace their steps, and admit that some of their decisions have led to extravagant results. Thus in Van Leer *vs*. Parr, upon the question whether Van Leer had or had not a good title to the lands against the contingent remainder men, &c., "I give no opinion," says one of the judges, "and the court ought still to avoid deciding upon the possible future rights of such absentees. Let them first lay in their claims. The series of our decisions has finally established this proposition in the laws of South Carolina, that, whenever in the sale of lands, the seller makes a general warranty of title, and a subsisting paramount title at law to the same lands belongs to a third person, as for instance an older grantee of the same lands, in such cases the purchaser is not obliged to wait for eviction, &c." 2 Richardson Equity, 324.

We are of opinion that this objection may not be set up at law in this action, so as to set aside this agreement, being more appropriate to a court of equity, where, if necessary or proper, the contract may be rescinded or modified upon such terms as the peculiar circumstances of the case may demand, and where Williamson, or those holding under him may be made parties, and the merits of his claim directly investigated.

An embarrassment has existed in our minds as to the proper disposition of the case, owing to the very defective character of the pleadings. The defendant sets up an arrangement to extinguish Williamson's claim, and avers that the Asylum has no title ; plaintiff replies that he is now and will be ready to make title *whenever defendant is ready to offer to pay* the purchase money, and this last

seems to have.been the issue submitted to the jury. As there was no offer to pay at the trial, or at any other time, the contingency had not arrived when it would be proper to determine such a question.— It was, in our opinion, an immaterial issue, and we were, at first, inclined to reverse the case and send it back, on that account; but as the point was not noticed in argument and both parties have desired a decision upon the merits, we have concluded to consider the question as if properly presented and raised by the pleadings and decided by the jury. If there were a prospect of the defendant presenting the matter of his defence anew, in another form, we should direct a repleader. 1 Burrows, 301. Cowper, 510. 16 Johns, 227. Evans v. Gee, 11 Peters, 85.

The case will then be affirmed with costs.

Chief Justice Douglas dissenting.