ELISHA WELLS, assignee, *vs.* STEPHEN P. DAY.

Franklin. Sept. 20, 1876; Sept. 18, 1877. — Feb. 26, 1878.

Where a person, at a sale by auction of distinct parcels of land, which are separately described in the advertisement of the sale, and separately sold, purchases a certain number of the parcels, signing a separate memorandum of the purchase of each, which states the price and binds him to the terms of the sale, the purchase of each parcel is a distinct contract, and the failure of the vendor to tender in season a deed of one parcel does not discharge the vendee from his obligation to perform his contracts respecting the other parcels.

The fact that an advertisement of a sale by auction of several lots of land, in describing the buildings on one lot, stated that there was "running water to house and barns;" that the memorandum of sale of the lot, signed by the vendee, included "also 100 or more rods of lead pipe conveying water to the house;" and

mere belief of the parties that the spring supplying the water was situated on an-other lot purchased by the vendee, it being afterwards discovered that the spring was not on that lot nor on any land of the vendor, cannot, in the absence of fraud, affect or control the vendee's written contract of purchase.

A vendee of land, to be conveyed free of incumbrances, who absolutely refuses to take any deed of the same or to accept performance of the contract of sale, can-not afterwards, in an action for the breach of his agreement to purchase, avail himself of any defect in the deed tendered, or of the fact that a mortgage upon the land was not discharged.

CONTRACT, in several counts, for breach of agreements to ac-cept deeds of certain parcels of land purchased by the defendant at a sale by auction, and to pay the prices at which they were struck off to him by the auctioneer.

Trial in the Superior Court, without a jury, before *Dewey*, J., who allowed a bill of exceptions in substance as follows:

On November 12, 1874, the plaintiff, as the assignee in bank-ruptcy of the estate of John H. Stebbins, having given due no-tice, offered and sold by public auction the real estate of Steb-bins, in twenty several parcels, in the order of their numbers, the advertisement of the sale of lot 1 containing the following description:

" The homestead now occupied by John H. Stebbins, situated on Deerfield Street. The house is a new, large, thorough-built, modern structure. There are two large stock and hay barns, one new tobacco barn, and all other necessary outbuildings, in good repair; with running water to house and barns."

The defendant purchased at the sale lots 1, 3, 4, and 17, and immediately thereafter signed a separate memorandum of the purchase of each, that of the purchase of lot 1 being as follows:

" No. 1. The homestead containing four and one half acres, more or less, with the buildings thereon, together with large barn, and such connecting sheds as stand on land of Julia A. Cowing. Also 100 or more rods of lead pipe conveying water to the house. The manure made on the place during the year from April 1st, 1874, till April 1st, 1875, not included in this sale. Terms: Deed given and payment required April 1st, 1875. Also a satisfactory guaranty that the terms and agree-ment of sale will be complied with.

" Nov. 12th, 1874. Having purchased the above property this day for $7550, I hereby agree to the above conditions."

Each of the other memoranda of sale contained the clause as to the guaranty, and as to the time of payment, except in that of lot 17, which provided that the deed was to be given and payment required on January 1, 1875.

At the opening of the sale, the plaintiff said that the property was mortgaged, but that a clear deed would be given; that the mortgages would be paid from the proceeds of the sale. At the time of the sale, it was supposed by both parties that the spring from which water was then conducted in pipes to the homestead lot was situated on lot 17, but on a subsequent running of the lines of that lot it appeared that the spring was neither on that, nor on any lot of Stebbins. No fraudulent representations were made at the sale, and it was in every respect conducted fairly.

On January 1, 1875, the plaintiff was absent from the state, and neither a deed of lot 17 nor the purchase money was ever tendered, and the lot was resold by the plaintiff on May 25, 1875, for an amount exceeding the sum agreed to be paid by the defendant.

On April 1, 1875, the plaintiff, having executed two deeds to the defendant, one of lot 1, and the other of lots 3 and 4, which were adjacent lots, went to the residence of the defendant, in the town of Rowe, in order to deliver or tender the deeds to the defendant. The plaintiff there notified the defendant's daughter, the defendant being absent, of the object of his visit, which she communicated soon after to the defendant. The deeds properly described the premises, but contained no warranty of title or covenant against incumbrances. The defendant, at the time of the sale to him, held a mortgage on lot 1, which has never been discharged, on which were due $2000 and interest, and certain expenses, the exact amount of which was not proved. The plaintiff, the day before the sale, tendered to the defendant in payment thereof a certain sum, which he refused to receive, claiming a larger sum as due him. The plaintiff deposited the sum tendered by him, and the same still remains so deposited, ready to be paid to the defendant. This mortgage has never been discharged. The Greenfield Savings Bank, at the time of the sale, held a mortgage on lots 3 and 4, with certain other lots, to the amount of $4700, which was not paid nor discharged until May 25. 1875.

On May 18, 1875, the plaintiff resold lot 1 by auction, at a loss of $1625, and lots 3 and 4, at a loss of $1010.47.

The judge found that the defendant stated to the plaintiff, during the latter part of the month of March, 1875, that he was not bound and should not take a deed of any of the lots, because lot 17 was not conveyed to him on January 1, 1875, and because the spring was not on lot 17, as he had supposed when he bid off the lots ; and, for these reasons, also found that the defendant did not intend to take deeds of lots 1, 3 and 4, and would not have taken the deeds of the same if the plaintiff had tendered to him deeds thereof free of incumbrances, nor if the mortgages had been discharged.

The judge also found that the deeds executed by the plaintiff and taken to the house of the defendant to be tendered him on April 1, 1875, were not such deeds as the plaintiff would have been bound to deliver before he could have required payment of the defendant of the purchase money agreed to be paid by him for lots 1, 3 and 4, but that the plaintiff was intending to pay the mortgages from the purchase money, and would have paid the amount of the mortgages if the defendant had objected to the deeds on account of the mortgages not being discharged.

Upon these facts, the judge rendered judgment for the plaintiff for $2965 ; and the defendant alleged exceptions.

The case was argued in September, 1876, by *D. Aiken,* ( *C. C. Conant* with him,) for the defendant, and by *G. M. Stearns,* ( *A. De Wolf* with him,) for the plaintiff ; and reargued in September, 1877, by *D. Aiken & J. A. Aiken,* ( *C. C. Conant* with them,) for the defendant, and by *G. M. Stearns & A. De Wolf*, for the plaintiff.

ENDICOTT, J. The plaintiff sold by public auction twenty parcels of land. They were separately described in the advertisement, and separately sold. Each lot stood by itself, and the defendant, having bid off four lots, numbered 1, 3, 4 and 17 respectively, signed a separate memorandum of the purchase of each, stating the price and binding himself to the terms of the sale. The purchase of each parcel was a distinct contract, and the failure of the plaintiff to tender a deed in season of lot 17 did not discharge the defendant from his obligation to perform his contracts made respecting the other lots. *Van Eps* v. *Schen-*

*ectady*, 12 Johns. 436. *Emmerson* v. *Heelis*, 2 Taunt. 38. *Roots* v. *Dormer*, 4 B. & Ad. 77. There is nothing to show that the lots purchased by the defendant were so complicated with each other that the enjoyment of one depended upon the purchase or possession of the others, and there was no understanding that the defendant was not to take any of the lots unless he could obtain all. See Sugd. Vend. (14th ed.) 320.

It is stated in the bill of exceptions that it was supposed by both parties, at the time of the sale, that the spring by which the water was conducted in pipes to lot 1 was situated on lot 17, but it was afterwards discovered that it was not on that lot, nor on any land belonging to the plaintiff. It does not appear whether the defendant was led so to suppose by representations on the part of the plaintiff, or by information derived from other sources, nor does it appear that the plaintiff was aware that such was the belief of the defendant. There is no imputation of fraudulent representations by the plaintiff, and it expressly appears that no fraudulent representations were made at the auction, and that the sale was in every respect fairly conducted. Whatever, therefore, may be the explanation or origin of this belief on the part of the parties, it clearly cannot affect or control the written contracts entered into by the defendant; and, in the absence of fraud or imposition, he is presumed to understand the terms and effect of them, and to assent to them. There was no mistake as to the subject matter of the contract, or the identity of the property sold, or the boundary of lot 1, as described in the advertisement, and recognized by the defendant when he signed the memorandum. See *Townsend* v. *Weld*, 8 Mass. 146 ; *Harlow* v. *Thomas*, 15 Pick. 66 ; *Noble* v. *Bosworth*, 19 Pick. 314 ; *Dodge* v. *Nichols*, 5 Allen, 548 ; *Grace* v. *Denison*, 114 Mass. 16 ; *Faucett* v. *Currier*, 109 Mass. 79, and 115 Mass. 20 ; *Mooney* v. *Miller*, 102 Mass. 217.

Nor can we hold that the contract is avoided because the advertisement, in describing the buildings situate on lot 1, states that they are " in good repair, with running water to house and barns," or because the memorandum of sale includes " also 100 or more rods of lead pipe conveying water to the house," when in point of fact the source of supply was not on land of the vendor. The statement that there is running water to the house

and barns does not, in terms or by necessary implication, amount to a stipulation or representation that the source of the supply belongs to the vendor, or is on the premises described or on other land of the vendor. There is nothing in the language necessarily indicating this, and there is nothing in the nature of the subject matter from which it is to be necessarily inferred. This statement may be entirely consistent with the vendor's ownership; but it would be equally consistent with the fact that the supply came from a public source, or from a water company, and from what source it actually came does not appear. As before stated, the sale of this lot was a distinct and independent contract, and is to be treated as if no other lots were bought and sold at the same time.

Nor does the statement that one hundred rods of lead pipe, conveying water to the house, are included in the sale carry with it any necessary presumption of ownership in the source of supply, or that the supply was an easement belonging to the estate. It was merely a statement that an artificial pipe of a certain length, in use at the time for the passage of water to the house, would be sold with the premises. Such a pipe will pass as appurtenant, although not mentioned in a deed; it is a fixture, and if it extends beyond the limits of the estate conveyed, as in this case, and is owned by the vendor, the vendee, as against him, would have the right of property in it and the right to use it. This pipe, therefore, would have passed to the defendant, although not mentioned in the memorandum; and the fact that it is mentioned cannot vary or enlarge the privilege, or imply any right to the flow of water through it. That is an easement not expressly described in the memorandum, and, in order to include it by implication, must actually have belonged to lot 1 at the time of the sale. *Philbrick* v. *Ewing*, 97 Mass. 133.

The defendant was not entitled to a warranty deed; *Kyle* v. *Kavanagh*, 103 Mass. 356; and, as the presiding judge found in substance that his refusal to take any deed, or to accept performance of the contract for the sale of lots 1, 3 and 4, was unqualified and absolute, he properly held that the defendant had waived his right to performance. He cannot, therefore, avail himself now of any defects in the deed proposed, or of the fact

that the mortgages were not discharged. *Carpenter* v. *Holcomb*, 105 Mass. 280. *Daniels* v. *Newton*, 114 Mass. 530, 533.

The contracts being separate and distinct, no reason is shown why the defendant is not liable for breach of his contracts in regard to lots 3 and 4; and, for the reasons stated, we are also of opinion that he is liable for breach of his contract for the purchase of lot 1.                    *Exceptions overruled.*