NATIONAL STEEL CORPORATION,
Plaintiff and Counter-Defendant,
Appellant,

v.

L. G. WASSON COAL MINING CORPO-
RATION, Defendant and Counter-
Claimant, Appellee.

No. 14344.

United States Court of Appeals
Seventh Circuit.

Nov. 4, 1964.

Rehearing Denied Dec. 7, 1964.

Fred P. Bamberger, Evansville, Ind., R. Stanley Lawton, Indianapolis, Ind., Robert H. Hahn, Evansville, Ind., Bamberger, Foreman, Oswald and Hahn, Evansville, Ind., Ice, Miller, Donadio & Ryan, Indianapolis, Ind., of counsel, for appellant.

Harry P. Dees, Evansville, Ind., Joseph A. Yocum, Evansville, Ind., Kahn, Dees, Donovan & Kahn, Evansville, Ind., of counsel, for appellee.

Before CASTLE, SWYGERT, and MAJOR, Circuit Judges.

SWYGERT, Circuit Judge.

This diversity action was brought by plaintiff National Steel Corporation for the recovery of $41,215.50 representing the balance owed by defendant L. G. Wasson Coal Mining Corporation, located at Boonville, Indiana, under a contract for the sale of 8,200 tons of sheet steel piling, to be fabricated according to government specifications and used by Wasson in the construction of a cofferdam at the Barkley Dam project on the Cumberland River in the State of Kentucky. Wasson was building the dam under a contract with the United States Corps of Engineers.

A counterclaim was filed by Wasson against National Steel in which recovery of consequential damages was sought in the amount of $41,210.35, for a breach of implied warranty of merchantability and fitness. It asserted that the steel in question was defective, thus permitting one cell of the cofferdam to rip open and collapse, resulting in the alleged damages.

The case was tried before the district court without a jury. Judgment was rendered upon special findings and conclusions of law in the amount of $210.35 in favor of Wasson, the difference between the amount which the court found was owing to National Steel and the amount of consequential damages for which the district judge held National Steel liable to Wasson. There is no dispute in this appeal regarding the amount owing to plaintiff on its complaint. The sole issue concerns the allowance of consequential damages to defendant.

The determinative questions are two-fold: first, whether a disclaimer of liability by plaintiff was a part of the contract and, second, if it was, whether it absolved plaintiff of liability for latent defects in the steel sold defendant. Both parties are in agreement that the law of Kentucky is controlling in the disposition of these questions.

Since there was no formal contractual document, it is essential to determine which communications between plaintiff and defendant constituted the contract under which they asserted their respective claims. On May 6, 1957, Wasson, upon request, received from National Steel a price quotation on sheet steel piling. On May 25, 1957, defendant executed a purchase order to plaintiff for 8,200 tons of sheet piling in accordance with specifications for the Barkley Dam project. On June 4, 1957, plaintiff sent defendant a written acknowledgment of the purchase order wherein it said: "We wish to acknowledge and to thank you for your order for the following material which is accepted on the terms indicated and subject to the conditions printed on the reverse side of the sheet." Among the "Conditions of Sale" on the reverse side of the written acknowledgment of the purchase order, the following appeared:

> "Claims for errors, shortages, imperfections, deficiencies, etc., will not be entertained by Seller unless made within thirty days after receipt of goods, and Seller shall not in any event be liable for labor charges or consequential damages arising from the use of defective material. * * "

The district judge concluded that the contract consisted of the purchase order, dated May 25, 1957, and the acknowledgment of the order, dated June 4, 1957, "subject to the construction hereinafter placed on such latter document." In the light of this finding, the conditions of sale listed in the acknowledgment constituted an integral part of the total agreement. Thus, the disclaimer clause became a binding term of the contract.

Wasson argues that it was not bound by this disclaimer since it had been misled into believing that the final terms of the contract had been fixed before it received National Steel's acknowledgment of the order. To support this contention, defendant refers to a letter it received from plaintiff, dated May 16, 1957, which National Steel sent to "complete your (Wasson's) file" and which included an attachment notifying the Army Corps of Engineers that National Steel had "contracted" with Wasson to supply the sheet metal piling needed for the project on the Cumberland River. Regardless of defendant's interpretation of this letter and attachment, the district judge made no finding that they were a part of the contract or that they misled the defendant with regard to the date on which the contract was completed. Rather, it must be inferred from his finding that they were not part of the agreement at all.

Although the district judge concluded that the June 4th acknowledgment was a part of the contract, he found that the disclaimer clause therein "was never discussed by the parties, nor referred to in previous communications between them, and was not noted nor assented to by the defendant." This finding, however, does not render the disclaimer clause a nullity. Absent a finding that defendant was misled or made a victim of fraud, it must be held bound by all the terms of the contractual document. Moreover, the judge's later discussion whether the disclaimer should be held to cover only patent, as distinguished from latent, defects indicates that he treated the clause in question as one of the terms of the contract and did not sever it from the rest of the agreement. Having freely entered into the contract, the defendant is bound by all of its terms. It is the law of Kentucky that one who makes a contract is presumed to know its terms, and that if he has an opportunity to read the contract to which he assents by signing or by conduct he is bound by its provisions, unless he has been misled about the meaning of the terms or his assent

is the result of fraud. Sears, Roebuck & Co. v. Lea, 198 F.2d 1012 (6th Cir. 1952).

Agreeing with the district judge in his finding that the acknowledgment of order was one of the contractual documents, we now consider the construction which the judge placed upon the terms of the disclaimer contained in the acknowledgment. Although the disclaimer clause simply states a waiver of liability for "consequential damages arising from the use of defective material," the judge ruled that this clause contemplated exculpation from liability only when there was a patent defect discoverable upon reasonable inspection. By reading the clause in this manner and concluding that thus it had no application to the facts of the instant case, the judge held the disclaimer did not bar recovery by defendant on its counterclaim.

We find no language in the contract nor any extracontractual communication which warrants such an interpretation of the clause in question. On the contrary, the language is clear in barring consequential damages arising from *any* defect whether it be patent or latent. To modify the disclaimer as drafted by the plaintiff by reading into it the word "patent" contravenes the well established rule that a court has no power to make a new contract for the parties or by construction to write a new agreement into which the parties have not entered. Adkins v. Ádams, 152 F.2d 489 (7th Cir. 1953).

The apparent basis for the district judge's insertion of the word "patent" into the disclaimer clause was his belief that without it the clause would be construed as a general waiver of liability and thus contrary to public policy. We have found no authority, however, for the proposition that such a general disclaimer of liability for consequential damages arising from the use of defective materials is invalid. Furthermore, the Uniform Sales Act is operative in Kentucky. Section 71 of that act provides: "Where any right, duty or liability would arise under a contract to sell or a sale by implication of law, it may be negatived or varied by express agreement. * * " KRS Section 361.710. If both parties freely agree to a waiver of liability, absent fraud or coercion, we know of no reason why such an agreement should be held ineffective on the basis that it is contrary to public policy.

The parties have raised additional issues in this case. They have argued, for example, whether in the absence of an express warranty there was an implied warranty. They have also disputed the sufficiency of the evidence to sustain the district judge's finding that the cause of damage to defendant was a latent defect in the steel furnished by plaintiff. Having already determined that the disclaimer clause requires a determination of non-liability on the part of plaintiff, we find it unnecessary to rule on these additional issues.

The cause is remanded with direction to vacate the judgment and enter a new one consistent with this opinion. Reversed and remanded.