Burke, J.
Plaintiff brought this action for specific performance of a contract to convey a parcel of land. The final judgment ordered Linoki to convey the property to the plaintiff by a “ Full Covenant and Warranty Deed”. On appeal to the Appellate Division that court modified the judgment by changing the decretal description of the property, and ordering the defendant to give a deed free of incumbrances and with the ‘ ‘ first and third covenants set forth in Form A of the statute (Real Property Law, § 258) ” instead of the full covenant and warranty deed.
On appeal to this court from the Appellate Division’s modification, the defendants assert that there was no enforcible contract made by the plaintiff with Linoki, and Linoki makes the *296 further contention that, even if such a contract was formed, he would be required to convey the land as an executor only by no more than a quitclaim deed.
We agree with the courts below that there is hmple evidence to support plaintiff’s claim that a binding contract was created at the time that the plaintiff orally accepted the written offer of Linoki to sell the described property. The contract satisfies the Statute of Frauds, contains all the essential terms and should be enforced. It is necessary however to modify the order of the Appellate Division as the plaintiff is entitled to receive only an ordinary executor’s deed.
On August 22,1960 defendant Linoki sent a letter to the plaintiff offering to sell him three lots of land for a purchase price of $3,500. The parcel included a lot which the plaintiff had sought to purchase from Linpki earlier that Summer. On the same day, August 22,1960, Linoki sent a virtually identical letter to defendant Ledogar, a broker doing business under the name of Domain Realty. This letter offered to sell these three lots to him at the same $3,500 price.
The plaintiff testified that, during a telephone conversation which he had with Linoki a few days after he had received the latter’s letter of August 22, he orally accepted the offer contained in the letter. The conversation pertinent to this acceptance was related as follows in the plaintiff’s testimony:
“ Q. Tell us now, if you will, what you said to him the first time after you got this letter of August 22nd? A. When he talked to me on the telephone, he said, when I talked to Mr. Linoki, he said, ‘ Well, I am very happy to do business with you, Mr. Tymon, as long as you said you wanted to make a contract for it.’
“ Q. He said, ‘ As long as you wanted to make a contract for it? A. Yes.
“ Q. Before he said that, did you say anything about making a contract for it? A. I didn’t say anything. He said it all.
“ Q. He said it all? A. Yes
“ Q. You said nothing? A. I talked to him
“ Q. What did you say? A. I said, ‘ I like the deal and I will take it.’
“ Q. Is that all? A. That’s right.”
*297 Linoki gave the plaintiff the name and telephone number of his attorney (Mr. McCormick) and asked that he make arrangements with the attorney to enter into a formal contract of sale. McCormick testified that the plaintiff called him several times and offered to sign the written contract as soon as it was prepared.
Due-to the fact that Linoki and McCormick were often out of town, plaintiff was delayed in signing a formal contract; so he wrote a letter to Linoki, dated September 10, 1960, reaffirming his oral acceptance of the August 22 offer and enclosing a deposit cheek.
On September 9 defendant Hayes wrote to Linoki and accepted the offer of August 22 which the latter had made by letter to Ledogar, Hayes’ broker. A deposit check was enclosed in Hayes’ letter, which was sent to Mr. McCormick, as recommended by Linoki in a telephone conversation which Ledogar had had with him earlier that same day, September 9.
On September 21, 1960 Linoki’s attorney, McCormick, wrote to the plaintiff returning his deposit check. The letter said, in substance, that Linoki had received a prior acceptance and was bound by it, and could not sell the property to the plaintiff as a result. Thereafter, on September 24, 1960, Linoki and Hayes signed a full and formal written contract for the sale of the land.
Appellants’ main argument is that the parties (Tymon, vendee, and Linoki, vendor) did not intend to be bound until a full and formal written contract of sale, signed by both parties, was entered into. They also contend that, even if the parties did intend to be bound, the contract should not be enforced against the vendor Linoki, since under the Statute of Frauds it would not be binding on the plaintiff, the latter’s acceptance having been an oral one.
The trial court found as a matter of law and fact that Linoki’s letter to the plaintiff on August 22 was an offer to sell the property and that the plaintiff’s oral acceptance of the offer by telephone created a binding contract. The appellants cannot be heard to deny that the letter was an offer, for they have consistently asserted that Linoki’s virtually identical letter to Ledogar was the offer upon which their alleged “ prior ” contract of sale was based.
*298 Linoki’s letter of August 22 to the plaintiff was clearly an offer, as was found by the trial court and affirmed by the Appellate Division. The plaintiff’s telephoned oral acceptance reached Linoki long before there was any attempt made to accept the offer made to Ledogar. Such is the undisturbed finding of the trier of fact. If as a matter of law we find this oral acceptance made an enforcible contract, we need not concern ourselves with the correspondence that followed. Thus considered, the letter and deposit sent by the plaintiff did not change the contractual relation between Linoki and himself; and the “ acceptance ” letter and subsequent formal contract between Hayes and Linoki came too late to cut off the plaintiff’s rights to the property.
In connection with the question of law we find cases in this court that hold that a binding contract is formed by an oral acceptance of a satisfactory written offer. (See Marat Corp. v. Abrams, 15 N Y 2d 1002 [1965], affg. 20 A D 2d 929.) In the case of Justice v. Lang (42 N. Y. 493 [1870]) our court enforced a contract for the sale of personalty which came within the Statute of Frauds. It did so on the basis of a writing signed by the defendant seller but not signed by the plaintiff buyer. An orally accepted promise to execute a lease was specifically enforced in the case of Pettibone v. Moore (75 Hun 461 [1894]). (See, also, Mason v. Decker, 72 N. Y. 595 [1878].) A realty contract was formed by an oral acceptance of a written offer to sell in the case of Fox v. Hawkins (150 App. Div. 801, 804 [1912]).
In a recent case similar to the one before us, a telephoned oral acceptance of a written offer was found to be sufficient ground for a specific performance decree against the offeror. (MacLaeon v. Lipchitz, 56 N. Y. S. 2d 609, affd. 269 App. Div. 953 [2d Dept., 1945].)
The cases appellants cite in support of their position on the necessity for a formal contract are easily distinguishable from the present situation, for, in each of them, there was a specific finding that the parties had not reached a full agreement and that they did not intend to be bound until the full and formal contract was signed. (Ansorge v. Kane, 244 N. Y. 395 [1927]; Pollak v. Dapper, 219 App. Div. 455 [1st Dept.], affd. 245 N. Y. 628 [1927]; Schwartz v. Greenberg, 304 N. Y. 250 [1952]; Harvey v. General Cable Corp., 1 A D 2d 79 [1955], affd. 2 N Y 2d 986.) *299 In the present ease all the necessary elements of the contract are contained in the writing and the trial court found as a matter of fact that, while a more formal document was contemplated by the parties, a binding contract was formed, as was intended, upon the plaintiff’s acceptance of Linoki’s offer. This finding has been affirmed by the Appellate Division. (Sanders v. Pottlitzer Bros. Fruit Co., 144 N. Y. 209 [1894]; Pelletreau v. Brennan, 113 App. Div. 806; No. 2 & 4 Roman Ave. v. Goddard, 220 App. Div. 138 [2d Dept., 1927].)
The conflict between the views of the trial court, the Appellate Division and the appellant Linoki as to the type of deed to be given by Linoki is settled by references to time-honored precedents. The Appellate Division in requiring that the deed contain only a covenant of seisen and a covenant against incumbrances relied on language in the opinion in the case of Burwell v. Jackson (9 N. Y. 535 [1854]). In the Burwell case the vendor agreed to convey certain realty with a “ good and sufficient deed of conveyance for the same ”. The question arose as to whether the agreement would be satisfied by anything less than a deed giving the vendee full title. The court concluded (p. 543) that in every executory agreement to sell realty there is “ an implied understanding to make a good title, unless such an obligation is expressly excluded by the terms of the agreement.” The court went on to “ overrule ” the case of Gazley v. Price (16 Johns. 267 [1819]) where a seller had agreed to give a “ good and sufficient deed to the premises ’ ’, and the court had held that the vendor ’s deed need only convey ‘ ‘ whatever title the vendor might have ”.
The Burwell case has been interpreted often since it was handed down. In Delavan v. Duncan (49 N. Y. 485 [1872]) a vendor urged that when there is an agreement to convey certain realty, with no express warranties in the contract, he could satisfy his obligation by the execution and delivery of a deed investing such title in the vendee as he, the vendor, had — even though such title was not perfect or free from incumbrances. The Delavan court stated (p. 487) that under Burwell the grantor must satisfy his contract obligations and give a deed that would ‘ ‘ vest in the grantee an unincumbered title to the premises”. However, the court went on to say (p. 486) that the situation there presented was different from one where a *300 vendee demands “ the vendor to give a deed with covenants of warranty, and against incumbrances, or other personal covenants.” Authority was cited to the effect that such was not the obligation of the vendor. It was pointed out that the first question — the question raised in the case before it, and for which it was relying upon Burwell for its answer — is a question of what kind of title must be conveyed in order to fulfill the contract of sale. The other question, i.e., the question before us and not before the Delavan court, is this: what kind of deed must a vendor give to his vendee when no specific promise as to warranties, etc., is contained in the contract?
The case of Bostwick v. Beach (103 N. Y. 414 [1886]) contains a clear and proper application of the doctrines set out in Burwell and Delavan. It resolved the problems raised here.
In Beach the plaintiff agreed to buy a farm from the estate of its deceased owner. Upon paying a deposit, he received the following memorandum of receipt:
“ Received, Watson, N. Y., 27th December, 1881, from L. A. Bostwick, five hundred dollars, to apply on the purchase of the property known as the Nelson J. Beach farm, situated at Beach’s bridge, in said town, this day bargained to be sold to said Bostwick for eleven thousand dollars, and we hereby agree to execute a deed for said property to said Bostwick, on the 1st day of March, 188-2, on payment of the balance of $10,500 * * *
‘ Horace L. Green,
‘ Alonzo H. Green,
‘ Emily P. Beach,
‘ Executors ’ ” (103 N. Y. 415-416.)
The action was for specific performance, the plaintiff having made a timely tender of the purchase money which the executors defendants refused. The court ruled that specific performance was properly decreed below, citing Burwell and stating that the plaintiff was entitled to a clear title, free from incumbrances since he had agreed to pay for the property at full value. However, the opinion made it clear that a proper decree would order the executors to give “ a deed conveying all the title which the testator had at the time of his decease ”. The court went on to say that the proper deed wad “ an executor’s deed in the ordinary form ”, It had been pointed out by the plaintiff that the *301 farm was subject to a $900 mortgage. For this reason the court modified the lower court’s decree and required that the defendants give an executor’s deed; but since, under Burwell, the vendee is entitled to receive the property ‘‘ free of incumbrances ’ ’ the modification provided for a $900 abatement of the purchase price. The court recited the doctrine of partial specific performance, under which a willing vendee has the right to receive whatever title the vendor can convey, along with a court awarded compensation against the purchase 1‘ for any deficiency in title, quantity of land, or other matters touching the estate, the value of which are capable of being ascertained and thus compensated without doing injustice to either party ” (103 N. Y., p. 422).
Since Bostwick v. Beach (supra) was handed down, several cases have raised a similar issue and have consistently resolved it in accord with the Bostwick result by relying on that case as well as Gazley v. Price (supra) and Van Eps v. Mayor of Schenectady (12 Johns. 436 [1815]) and other early cases. These more recent cases which have followed Bostwick include Emerick v. Hackett (192 N. Y. 162 [1908]), Roberts v. Hoberg (212 App. Div. 595 [1925]), and House v. Hornburg (267 App. Div. 557 [1944], affd. 294 N. Y. 750).
In the most recent of these, House v. Hornburg, the question was raised as an issue subordinate to the main problem, this central issue being whether a broker had brought a vendor and vendee together into such a sales agreement as would require the vendor to pay him his commission. The vendor agreed to convey a farm by a “ good and sufficient deed”. The vendee later demanded that the vendor perform and give him a warranty deed. For a number of reasons the vendor reneged. The Appellate Division ruled that the commission was not earned since the vendee was willing to accept only a warranty deed. The vendor’s promise to give a “ good and sufficient deed ”, said the court, did not require that she give a warranty deed, citing Van Eps v. Mayor of Schenectady (supra) with approval. This doctrine remains as the law of the State today.
In the present case -there has been no showing or assertion that the title which the present testator had is subject to any incumbrances and we are not here concerned with the issue of the kind of title which the plaintiff will receive. The only question is *302 what type of deed should be given. The order of the Appellate Division should be affirmed with the exception of a modification requiring that the property be conveyed to the plaintiff by an executor’s deed in the ordinary form.
The order of the Appellate Division is modified to provide that the property be conveyed to the plaintiff by an executor’s deed in the ordinary form and, as so modified, affirmed.
Chief Judge Desmond and Judges Dye, Fuld, Van Voorhis and Scileppi concur with Judge Burke ; Judge Bergan taking no part.
Order modified in accordance with the opinion herein and, as so modified, affirmed, without costs.