**AVILA GROUP, INC., Petitioner,**

v.

**NORMA J. OF CALIFORNIA, Respondent.**

**No. 76 Civil 5070.**

United States District Court, S. D. New York.

Feb. 16, 1977.

---

Kreindler, Relkin & Goldberg, New York City, for petitioner; George E. Goldberg, New York City, of counsel.

Schupak, Rosenfeld & Fischbein, New York City, for respondent; Peter D. Fischbein, Donna-Marie Gilligan, New York City, of counsel.

## OPINION

EDWARD WEINFELD, District Judge.

Pursuant to 9 U.S.C., section 4, and 28 U.S.C., section 2283, Avila Group, Inc. ("Av-

ila"), a New York corporation with its principal place of business in New York, petitions this Court for an order compelling arbitration of a dispute arising out of two contracts between it and Norma J. of California ("Norma J."). Avila also seeks to stay an action upon the same contracts brought by Norma J. in California state court.

Norma J. is a California corporation and has its principal place of business in California, and the amount in controversy is well over $10,000. The Court thus has diversity jurisdiction over the subject matter of the suit under 28 U.S.C., section 1332(a). The contracts at issue, calling for the delivery of thousands of dollars worth of textiles from New York to California, clearly evidence a transaction involving interstate commerce, and thus the provisions of the Federal Arbitration Act[1] are applicable to the petition.[2]

In February 1976, Norma J. placed two orders with Avila to purchase a total of 80,000 yards of various fabrics, which Norma J. intended to use in the manufacture of clothing. The purchase orders were on Avila's standard order form, provided by independent salesmen representing Avila in California, and were signed by Norman Ring in his capacity as Norma J.'s president. Norma J. asserts that the samples of the fabrics shown to Ring before the order was placed had a special "crisp" finish that was required to cut the patterns for the clothes Norma J. intended to produce. Norma J. rejected the first shipment of the orders on the ground that the fabrics sent did not have a crisp finish, and it subsequently refused to accept delivery of the remainder of the orders. By letter dated May 21, 1976, Avila commenced arbitration proceedings in New York City against Norma J., pursuant to provisions contained in the order forms that all disputes arising under them would be settled by arbitration in New York. Norma J. declined to submit to arbitration.[3] Instead, on October 26, 1976, it instituted an action against Avila in the California Superior Court seeking damages for breach of contract and requesting declaratory and injunctive relief on its claim that the contracts between it and Avila did not require arbitration of disputes. On November 11, 1976, Avila filed the instant petition to compel arbitration, and all proceedings in the California action have been stayed pending this Court's decision.

Norma J. opposes the petition on two grounds. First, it asserts that Ring neither read nor had notice of the arbitration and consent-to-jurisdiction provisions of the order forms when he signed them and that those provisions thus did not become part of the parties' contract. Second, it contends that because Avila never returned countersigned copies of the order forms showing acceptance by Avila, no contract came into being and no agreement to arbitrate was reached. These claims will be addressed individually.

Norma J.'s contention that it neither agreed to arbitration nor consented to New York in personam jurisdiction is based on the fact that the contract clauses dealing with these matters are on the reverse sides of the order forms. Ring asserts that he did not know what those provisions contained, that he took no notice of them, and that Avila's sales representatives did not mention them. Avila argues that whether Ring read the reverse sides of the contracts is immaterial because the front sides gave legally sufficient notice of the provisions on the back to bind Norma J.

---

1. 9 U.S.C. §§ 1–14.

2. *Id.* §§ 1 & 2; *see Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 400–01, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967); *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 209 (2d Cir. 1973).

3. In response to the petitioner's demand that the dispute be submitted to arbitration, respondent's attorneys, while asserting "there was no legally binding agreement between the parties which would require arbitration," nonetheless stated: "[Norma J.] is perfectly willing to submit this dispute to arbitration. However, because New York is an extremely inconvenient forum to our client, Norma J. of California is *not* willing to have the arbitration conducted in New York. . . . Our client does stand ready to arbitrate the matter in California . . . ."

■ This proceeding is governed by section 4 of the Federal Arbitration Act,[4] which provides:

A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court . . . for an order directing that such arbitration proceed in the manner provided for in such agreement. . . . The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

It is well established that Congress, in passing this section of the Arbitration Act, created national, substantive law under its commerce and maritime powers and that such law governs the questions of validity, revocability and enforceability of arbitration agreements under the coverage of the Act.[5] Thus, the law to be applied in deciding whether Norma J. is bound by the arbitration and consent-to-jurisdiction provision of the contracts is neither California law nor New York law, but "[f]ederal law, comprising generally accepted principles of contract law".[6]

■ In order to prevail on its argument, Norma J. must bring itself within an exception to the general contract rule that a person of ordinary understanding and competence will be bound by the provisions of a contract that he signs whether or not he has read them.[7] In light of facts as to which there is no dispute in this proceeding, Norma J.'s contention that it should not be held to the arbitration provision because its president had no notice of such a provision must be rejected as insufficient to deny application of the general rule.

First, many of the state court cases that Norma J. cites in support of its position, which are not controlling in any event,[8] can readily be distinguished from the present case. Those cases involved parties of substantially unequal bargaining power and sophistication or else dealt with contracts that would actually fail to give a reasonable man notice of "small print" provisions governing the rights and remedies of the parties.[9] In this case, both Norma J. and its president are admittedly sophisticated parties in the textile field.

More importantly, respondent does not charge that the orders were signed or in-

---

4. 9 U.S.C. § 4.

5. *Prima Paint Corp. v. Flood & Conklin Mfg. Co.*, 388 U.S. 395, 404–06, 87 S.Ct. 1801, 18 L.Ed.2d 1270 (1967), aff'g 360 F.2d 315 (2d Cir. 1966); *Varley v. Tarrytown Associates, Inc.*, 477 F.2d 208, 209 (2d Cir. 1973); *Coenen v. R. W. Pressprich & Co.*, 453 F.2d 1209, 1211 (2d Cir.), *cert. denied*, 406 U.S. 949, 92 S.Ct. 2045, 32 L.Ed.2d 337 (1972); *Metro Industrial Painting Corp. v. Terminal Const. Co.*, 287 F.2d 382, 385 (2d Cir. 1961); *Robert Lawrence Co. v. Devonshire Fabrics, Inc.*, 271 F.2d 402, 409 (2d Cir. 1959), *cert. dismissed*, 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960); *Bigge Crane & Rigging Co. v. Docutel Corp.*, 371 F.Supp. 240, 243 (E.D.N.Y.1973).

6. *Wells Fargo Bank Int'l Corp. v. London S. S. Owners Mut. Ins. Ass'n, Ltd.*, 408 F.Supp. 626, 628 (S.D.N.Y.1976).

7. *See Hicks v. Ocean Drilling & Exploration Co.*, 512 F.2d 817, 825–26 (5th Cir. 1975), *cert. denied*, 423 U.S. 1050, 96 S.Ct. 777, 46 L.Ed.2d 639 (1976); *National Steel Corp. v. L. G. Wasson Coal Mining Corp.*, 338 F.2d 565, 567–68 (7th Cir. 1964); *Design and Development, Inc. v. Vibromatic Mfg., Inc.*, 58 F.R.D. 71, 73 (E.D. Pa.1973); *National State Bank v. Terminal Const. Co.*, 217 F.Supp. 341, 354 (D.N.J.1963), *aff'd mem.*, 328 F.2d 315 (3d Cir. 1964); *Pimpinello v. Swift & Co.*, 253 N.Y. 159, 162–63, 170 N.E. 530 (1930); *James Talcott, Inc. v. Wilson Hosiery Co.*, 32 A.D.2d 524, 299 N.Y.S.2d 460, 461–62 (1st Dep't 1969); 3 Corbin, Contracts § 607 (1961); 1 Williston, Contracts § 95A (3d Ed. 1962); 17 Am.Jur.2d, Contracts § 149.

8. *See* text accompanying notes 4, 5 *supra*.

9. *See, e. g., AAACON Auto Transp., Inc. v. Klee*, 356 F.Supp. 319 (S.D.N.Y.1973); *Windsor Mills, Inc. v. Collins & Aikman Corp.*, 25 Cal. App.3d 987, 101 Cal.Rptr. 347 (1972) (arbitration clause contained in order form, contractual nature of which was not obvious, that was sent to buyer after it had placed oral orders and that was never signed by buyer).

duced under fraudulent circumstances. To the contrary, Ring, its president, states that when he signed the orders he "glanced at them to confirm the amounts, prices and other information [the salesmen] had written on them," and that he "did not notice the small fine print in the lower righthand corner of the form." Significantly, however, the very portion of the face page of the contract that Ring signed contains notice that the arbitration and consent-to-jurisdiction provisions are set forth on the reserve side. Immediately above the line where Ring signed the order, it is stated in print that—given its position on the page— is conspicuous: "this order is given subject to the terms herein stated and those on the reverse side hereof *including arbitration,* which are hereby accepted by the buyer." [10] Indeed, Ring's signature on one of the forms actually passes through the word "arbitration" in the notice appearing immediately above the signature line.

Courts applying federal law under the Arbitration Act have rejected cases that purport to apply special rules and requirements to agreements to arbitrate that are not applicable to other contracts.[11] In the absence of allegations of fraud or duress, these courts have focused "not on whether there was subjective agreement to all clauses in the underlying contract but [on] whether there was agreement to the contract embodying the clause in question." [12]

Under the circumstances, it is clear that the notifications on Avila's forms concerning arbitration and consent-to-jurisdiction were sufficient to pass muster under applicable federal standards.[13]

Norma J. also argues that Avila never effectively accepted the orders for fabric and thus that no agreement to arbitrate disputes ever came into being. This argument is based on a portion of the very legend that Norma J. asserts to be inadequate to give notice of the arbitration provisions. In relevant part that legend states: "This order . . . shall become a contract only when signed and delivered by the buyer to the seller and accepted in writing by the seller, or when buyer has accepted delivery of the whole or any part of the goods." Norma J. claims that Avila never countersigned the orders and that no goods were ever accepted under the contract. For several reasons, however, this claim cannot justify denial of Avila's petition to compel arbitration.

■ First, Norma J. is equitably estopped from asserting at this stage that no contract ever existed between the parties. This contention was first raised during oral argument on the petition to compel arbitration and was not included in Norma J.'s papers in response to the petition. But of greater significance, however, is the action

---

**10.** *Emphasis added.* Although it plays no part in the disposition of the present petition, the Court notes that arbitration provisions are apparently so common in the textile industry that the courts of New York have indicated willingness to take judicial notice of the fact. *See, e. g., Helen Whiting, Inc. v. Trojan Textile Corp.,* 307 N.Y. 360, 367, 121 N.E.2d 367, 370 (1954); *Loudon Mfg., Inc. v. American & Efird Mills, Inc.,* 46 A.D.2d 637, 360 N.Y.S.2d 250, 251 (1st Dep't 1974).

**11.** *E. g., N & D Fashions, Inc. v. DHJ Indus., Inc.,* 548 F.2d 722 (8th Cir. 1976) (rejecting *Application of Doughboy Indus., Inc.,* 17 A.D.2d 216, 233 N.Y.S.2d 488 (1st Dep't 1962), relied upon by Norma J., as not stating the federal law); *Medical Dev. Corp. v. Industrial Molding Corp.,* 479 F.2d 345, 348 (10th Cir. 1973) (expressly rejecting *Commercial Factors Corp. v. Kurtzman Bros.,* 131 Cal.App.2d 133, 280 P.2d 146 (1955), as not stating the applica-

ble standard under the Arbitration Act); *Collins Radio Co. v. Ex-Cell-O Corp.,* 467 F.2d 995, 998–99 (8th Cir. 1972); *Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240, 243 (E.D.N.Y.1973) ("Plaintiff contends that the arbitration clause was 'buried' in the contract and that there was no meeting of the minds on this clause. But plaintiff cannot maintain that it is an unsophisticated party or that the agreement was entered into under fraud or duress").

**12.** *Bigge Crane & Rigging Co. v. Docutel Corp.,* 371 F.Supp. 240, 243 (E.D.N.Y.1973).

**13.** The Court thus has jurisdiction over Norma J. pursuant to the parties' agreement. *See National Equipment Rental, Ltd. v. Szukhent,* 375 U.S. 311, 315, 84 S.Ct. 411, 11 L.Ed.2d 354 (1964); *Reed & Martin, Inc. v. Westinghouse Elec. Corp.,* 439 F.2d 1268, 1276–77 (2d Cir. 1971).

**542**

commenced by Norma J. on October 21, 1976, in the California Superior Court seeking damages for Avila's alleged breach of the very order that contains the arbitration provision and also seeking in that action a declaration that the provision is not binding. Additionally, in its reply to the present petition to compel arbitration, Norma J. admits that it and Avila "were parties to two contracts, which contracts were partly oral and partially in writing,[14] whereby Petitioner agreed to sell and Respondent agreed to purchase a total of 80,-000 yards of textile fabric . . . ."

▮ Norma J. cannot be allowed to assert the existence of a valid contract under the order form to recover damages from Avila in the California action and at the same time contradictorily assert that no contract exists in order to avoid arbitration of its claims and those of Avila.[15] To allow Norma J. to claim the benefit of the contract and simultaneously avoid its burdens would both disregard equity and contravene the purposes underlying enactment of the Arbitration Act.[16] This is especially so when Norma J. has for almost a year indicated by its actions and words that a contract was entered into by the parties,[17] and when it has in judicial proceedings repeatedly affirmed the existence of such a contract, concededly composed in major part of the documents signed by its president.

▮ Finally, the failure of Avila to return a signed copy of the purchase orders, even assuming the contested fact that Norma J. never accepted any portion of the goods, would not negate the existence of the contract in any event. It is not contested that Avila shipped the first portion of the orders to Norma J. and thus began to render its performance under the contract. This action itself would be sufficient to constitute an acceptance of Norma J.'s offer under the applicable provisions of the

**14.** The alleged oral portion concerns warranties not set forth in the order form.

**15.** *See In re Johnson,* 518 F.2d 246, 252 (10th Cir.), *cert. denied,* 423 U.S. 893, 96 S.Ct. 191, 46 L.Ed.2d 125 (1975); *Colonial Refrigerated Transp., Inc. v. Mitchell,* 403 F.2d 541, 550 (5th Cir. 1968); *Lummus Co. v. Commonwealth Oil Ref. Co.,* 280 F.2d 915, 928 (1st Cir.), *cert. denied,* 364 U.S. 911, 81 S.Ct. 274, 5 L.Ed.2d 225 (1960) (defendant "cannot first ask us to consider the contracts as entire and indivisible for the purpose of making the arbitration clauses voidable by virtue of fraud relating to the principal agreements, and then seek to treat the provisions as separable so as to affirm part and rescind the rest"); *Tepper Realty Co. v. Mosaic Tile Co.,* 259 F.Supp. 688, 692 (S.D.N.Y. 1966) ("plaintiffs cannot claim that [defendant] is a party to the first contract to enforce it against [defendant] in this action and be heard to deny that it is such a party for purposes of avoiding arbitration of claims"); *cf. Ernst & Ernst v. Hochfelder,* 425 U.S. 185, 215, 96 S.Ct. 1375, 47 L.Ed.2d 668 (1976) (having proceeded on a single theory of liability throughout lengthy history of case, plaintiff could not pursue new theory after Supreme Court reversal of verdict based on original theory); *Atkinson v. Atkinson,* 167 F.2d 793, 796–97 (7th Cir. 1948) (plaintiff not allowed to attack deed as fraudulent to defeat co-transferee's interest and simultaneously argue its validity with respect to her own interest); *McLean v. Texas Co.,* 103 F.2d 989, 991–92 (5th Cir.), *cert. denied,* 308 U.S. 579, 60 S.Ct. 98, 84 L.Ed. 485 (1939) (party

may not enforce only those provisions of contract beneficial to him); *Interpace Corp. v. Penbrook Hauling Co.,* 389 F.Supp. 560, 564 (M.D. Pa.1975) (party cannot assert validity of contract yet avoid its limitations); *Tymon v. Linoki,* 16 N.Y.2d 293, 266 N.Y.S.2d 357, 360, 213 N.E.2d 661, 664 (1965) ("The appellants cannot be heard to deny that the letter was an offer, for they have consistently asserted that . . . [a] virtually identical letter . . . was [an] offer"); *Feuer v. Feuer,* 8 A.D.2d 805, 187 N.Y. S.2d 933, 934 (1st Dep't 1959) ("A litigant may not seek affirmative relief on the basis of a judgment which he is simultaneously asserting is fraudulent and ineffective to effect his rights"); *Architectural Aluminum Corp. v. Macarr, Inc.,* 70 Misc.2d 495, 333 N.Y.S.2d 818, 822 (Sup.Ct.1972) (plaintiff may not sue upon written warranty and simultaneously deny applicability of its conspicuous, express disclaimer).

**16.** *See* 9 U.S.C. § 2; H.R.Rep.No.96, 68th Cong., 1st Sess. (1923).

**17.** Indeed, by its own president's affidavits, Norma J. indicates that it rejected the goods delivered to it solely on the basis that they were improperly finished, conveyed this information to Avila and then attempted *to* "cancel" the contract between them. These events took place in April, 1976.

Uniform Commercial Code.[18] In addition, Avila sent Norma J. a signed copy of an order form covering the first shipment of fabric under the original orders and referring to such orders, and it sent Norma J. invoices for portions of the goods covered by both original purchase orders.[19] These documents constitute acceptances by Avila in writing of the original orders and thus meet the terms specified for acceptance in the order forms. Moreover, although an offeror, in this case Norma J., may prescribe an exclusive manner of acceptance of its offer, an acceptance that does not conform to its terms will nevertheless result in a contract when the offeror indicates his assent to the acceptance.[20] Norma J. not only specified to Avila that its reasons for rejecting the fabrics were because the goods did not conform to the parties' agreement, it also brought suit against Avila in California seeking damages for breach of a contract that Norma J. admits was evidenced by the original purchase orders. These facts, admitted by Norma J., establish that a contract did indeed exist between the parties.

Accordingly, the petition to compel arbitration according to the terms of Avila's purchase orders is granted, and Norma J. is directed to stay its California Superior Court action pending the outcome of that arbitration.

---

**18.** U.C.C. § 2–206(1)(b) ("an order or other offer to buy goods for prompt or current shipment shall be construed as inviting acceptance . . . by the prompt or current shipment of conforming or non-conforming goods").

**19.** There is no dispute that Norma J. received both of these documents. Moreover, the order forms involved provide that mailing of written acceptance, regardless of receipt, will result in the formation of a contract.

**20.** *Allied Steel & Conveyors, Inc. v. Ford Motor Co.*, 277 F.2d 907, 911 (6th Cir. 1960); *United States Ore Corp. v. Commercial Transport Corp.*, 369 F.Supp. 792, 796 (E.D.La.1974).